[Cite as *P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice, Inc.*, 2011-Ohio-2990.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

P.N. GILCREST LIMITED
PARTNERSHIP

     Appellant

     v.

DOYLESTOWN FAMILY PRACTICE,
INC., et al.

     Appellees

C.A. No.     10CA0035

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    07-CV-0221

DECISION AND JOURNAL ENTRY

Dated: June 20, 2011

---

WHITMORE, Judge.

**{¶1}** Plaintiff-Appellant, P.N. Gilcrest Limited Partnership ("the Partnership"), appeals from the judgment of the Wayne County Court of Common Pleas, granting judgment in favor of Doylestown Family Practice, Inc., Dr. Kathleen Scroggins, and Neil Scroggins (collectively "the Practice"). This Court affirms.

I

**{¶2}** This is the third time this matter has been before this Court. The first time the Partnership appealed, the parties requested dismissal of the appeal in order to obtain a final, appealable order, so this Court granted their request. See *P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice, Inc., et al.* (July 20, 2009), 9th Dist. No. 09CA0038. The second time, we dismissed the appeal for lack of a final, appealable order because several claims remained pending in the trial court. *P.N. Gilcrest Ltd. Partnership v. Doylestown Family*

*Practice, Inc., et al.*, 9th Dist. No. 09CA0051, 2010-Ohio-1803, at ¶12-13.  In doing so, we explained the dispute between the parties as follows:

> "[The Partnership] is a limited partnership whose sole general partner is P. Gilcrest Limited Liability Company.  [The Partnership] *** leased its medical office to Phillip N. Gilcrest, M.D. Inc. ("Gilcrest Inc."), whose sole shareholder, Dr. Phillip N. Gilcrest, used the office to operate as a solo medical practitioner. Subsequently, Dr. Kathleen Scroggins, the principal shareholder of Doylestown Family [Practice, Inc.], entered into an agreement with Gilcrest[] Inc. whereby she agreed to provide medical services at the medical office as an independent contractor.  Dr. Scroggins later recruited Dr. Douglas Wenger to work as another practitioner at the medical office.
>
> "At some point, [the Practice] remodeled [the Partnership]'s medical office to create additional space for more physicians.  [The Partnership] claims it did not agree to the remodeling and that Dr. Scroggins misrepresented her intention to join Gilcrest Inc. for the purpose of later taking over the medical practice and continuing to operate it as a solo practice.  On May 28, 2007, [the Partnership] brought suit against [the Practice] and Dr. Wenger, arguing that they caused damage to the property and were liable for trespass and negligence.  A plethora of claims ensued.
>
> "*** Dr. Wenger filed his answer as well as a third-party complaint against Gilcrest[] Inc. and Dr. Gilcrest for indemnification and contribution. [In turn, the Practice] filed [its] answer as well as counterclaims against [the Partnership] for breach of contract, unjust enrichment, and abuse of process.  [The Practice then] filed a third-party complaint against Gilcrest[] Inc. and Dr. Gilcrest for indemnity, contribution, and abuse of process. Thus, the suit consisted of the original claims for trespass and negligence, the counterclaims for breach of contract, unjust enrichment, and abuse of process, the third-party claims for indemnification and contribution asserted by Dr. Wenger, and the third-party claims for indemnification, contribution, and abuse of process asserted by [the Practice].
>
> "*** Dr. Wenger filed a motion for summary judgment on [the Partnership]'s claims for trespass and negligence.  [The Practice] filed [its] own motion for summary judgment on the same claims[.]  [The Partnership] filed a memorandum in opposition to [the Practice]'s motion for summary judgment, but did not respond to Dr. Wenger's motion.  *** [Following a discovery dispute, the Practice]  re-filed [its] motion for summary judgment and [the Partnership] responded with a memorandum in opposition.
>
> "[The Partnership voluntarily dismissed] its trespass and negligence claims against Dr. Wenger [and] *** the trial court *** grant[ed] [the Practice's] motion for summary judgment on [the Partnership]'s claims for trespass and negligence. ***

"[The Partnership] filed a motion for summary judgment on [the Practice's] counterclaim for abuse of process [which] [t]he trial court granted[.]" *P.N. Gilcrest Ltd. Partnership* at ¶2-7.

Next, Dr. Wenger dismissed, with prejudice, his indemnification and contribution claims against Gilcrest Inc. and Dr. Gilcrest.

**{¶3}** As noted in our last review of this case, the Practice had improperly attempted pursuant to Civ.R. 41(A)(1) to dismiss some, but not all, of its third-party claims against Gilcrest Inc. and Dr. Gilcrest and its counterclaims against the Partnership. Id. at ¶12. Additionally, the Practice also attempted to dismiss its abuse of process claim against Gilcrest Inc., but failed to simultaneously dismiss its indemnity and contribution claims, in violation of Civ.R. 41(A)(1). Id. Following our dismissal of the Partnership's appeal, the Practice filed with the trial court a notice of dismissal under Civ.R. 41(A)(1) as to all of its third-party claims and filed a motion pursuant to Civ.R. 41(A)(2) requesting the trial court dismiss all of its remaining counterclaims. On June 18, 2010, the trial court granted the Practice's motion to dismiss. The Partnership appealed and the Practice filed a cross-appeal. Consequently, this matter is now properly before this Court.

**{¶4}** The Partnership has asserted three assignments of error, and the Practice has asserted a cross-appeal with two assignments of error for our review.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT'S TRESPASS CLAIM."

**{¶5}** In its first assignment of error, the Partnership argues that the trial court erred in granting summary judgment in the Practice's favor on the Partnership's trespass claim. Specifically, the Partnership argues that the trial court erred in concluding that the Partnership

did not have possession sufficient to support its trespass claim and that genuine issues of material fact remain as to whether the Practice had received permission from the Partnership to remodel the medical office. We disagree.

{¶6} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. It applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12. Summary judgment is proper under Civ.R. 56(C) if:

> "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in the favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support its motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293; Civ.R. 56(E). In order to prevail on a claim of civil trespass, the Partnership must establish that the Practice engaged in "(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." *Baker v. Fish* (Dec. 6, 2000), 9th Dist. No. 19912, at *6, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 716.

{¶7} It its motion for summary judgment, the Practice points to the underlying complaint in this matter as evidence that the Partnership admits to owning the real property that

constitutes the "medical office" at issue here. Further, the Practice notes that the Partnership's complaint states that Gilcrest Inc. was its "tenant" at all times relevant to this litigation, and that as the tenant, Gilcrest Inc. entered into a professional agreement with Dr. Scroggins to provide "professional and management services" at the medical office. Consistent with this relationship, Gilcrest Inc., admitted in a request for admission that "as Lessee, [it] had the exclusive right of possession of the [m]edical [o]ffice." Based on these undisputed facts, the Practice argues that the Partnership cannot prevail on its trespass claim as a matter of law, because, by its own admission, it was not in exclusive possession of the property at the time the remodeling occurred, but had relinquished possession by leasing the property to Gilcrest Inc. The Practice cites to the Supreme Court's decision in *Rowland v. Rowland* (1837), 8 Ohio 40, in support of its assertion that "[t]he Partnership's lack of possession is dispositive to its trespass claim." The motion also goes on to aver, by way of a supporting affidavit from Dr. Scroggins, that she was authorized to modify the medical office based on: the terms of the parties' professional agreement; the addition of Dr. Wenger to the medical office; prior conversations he had with Dr. Gilcrest about the changes; and Dr. Gilcrest's failure to object to any of the remodeling, despite being present for at least a portion of it.

{¶8} In response, the Partnership agrees that a party must establish a possessory interest in the property at the time that the trespass occurred, but argues under the authority of this Court's decision in *Elite Designer Homes, Inc. v. Landmark Partners*, 9th Dist. No. 22975, 2006-Ohio-4079, at ¶28, that "legal title to the real estate generally constitutes constructive possession sufficient to support an action in trespass." Additionally, it cites to *Rowland* and *Kay Homes, Inc. v. South* (Nov. 18, 1994), 11th Dist. No. 93-L-182, (a decision that this Court relied on in *Elite Designer Homes, Inc.*) to support its assertion that, even though the Partnership was

not in actual possession at the time of the trespass, it held legal title to the medical office, which serves as an adequate basis for a trespass action. The Partnership's argument, however, ignores a common and key distinguishing feature between its case and the cases it relies on for the proposition that constructive possession can serve as the basis for a trespass action. That is, in those cases, the courts acknowledged constructive possession as a possible means to support a trespass claim where there was not a party in actual possession, unlike this case. See *Rowland*, 8 Ohio at 42 (noting that "[p]roof of title, without proof of actual possession, is in general sufficient to put a defendant upon his defense, \*\*\* [b]ut if there be evidence \*\*\* of the possession of a tenant at will or for years, at the time of the trespass committed, the plaintiff must fail in his action"); *Kay Homes, Inc.*, at \*2 (noting that, "[i]n the absence of actual possession, legal title to the real estate will ordinarily constitute constructive possession sufficient to permit an action in trespass" and concluding that appellants, who held an executory purchase contract contingent on certain events occurring, could not maintain a trespass action because they never had actual or constructive possession of the property under the terms of the contract); and *Elite Designer Homes, Inc.* at ¶30 (concluding that, under an executory purchase contract which conditioned possession on specified events that never occurred, appellant's trespass claim failed as a matter of law because it "failed to show that it had either actual or constructive possession of [the] lot \*\*\* at the time of the asserted trespass"). Moreover, the Supreme Court expressly stated in *Rowland* that, where there is a tenant in actual possession, as is the case here, "merely the tenant alone can have an action" for trespass. *Rowland*, 8 Ohio at 42.

{**¶9**}     Because the Partnership was not in actual possession of the medical office at the time of the alleged trespass, its claim must fail as a matter of law. See id.; *Baker*, at \*6. Additionally, given the conjunctive nature of the elements necessary to support a claim of

trespass, a party's failure to satisfy one element of the offense eliminates the need for this Court to address arguments in support of the other. See, e.g., *Williams v. Time Warner Cable*, 9th Dist. No. 25014, 2010-Ohio-1828, at ¶16 (declining to address the second prong of workers' compensation eligibility in an appeal from summary judgment where plaintiff-appellant failed to satisfy the first.) Consequently, this Court need not consider whether genuine issues of fact remain as to whether Dr. Gilcrest had knowledge of and granted Dr. Scroggins permission to remodel the office areas, as the Partnership cannot, as a matter of law, sustain its trespass action.

{¶10} To the extent that the Partnership has since modified its argument and now argues on appeal that it can maintain a trespass claim to account for damages incurred to its reversionary interests, we note that it failed to raise this argument at the trial court level in response to the Practice's summary judgment motion. Accordingly, this Court will not consider the argument on appeal. See *Olson v. Holland Computers, Inc.*, 9th Dist. No. 06CA008941, 2007-Ohio-4727, at ¶23 (declining to address a supplemental basis set forth by appellant in support of her summary judgment challenge because it was not raised with the trial court in the first instance).

{¶11} The trial court did not err by granting summary judgment to the Practice on the Partnership's trespass claim. Accordingly, the Partnership's first assignment of error is overruled.

### Assignment of Error Number Two

"THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT, AS TO APPELLANT'S NEGLIGENCE CLAIM."

{¶12} In its second assignment of error, the Partnership argues that the trial court erred in granting summary judgment in the Practice's favor with respect to the Partnership's negligence claim. We disagree.

{¶13} Given the nature of this alleged error, we incorporate the standard of review from the Partnership's first assignment of error into our review here. In order to prevail on a negligence claim, a plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting from the breach of duty. *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶14} In its motion for summary judgment, the Practice notes that the Partnership's complaint does not specifically identify any statutory or common law duty from which it can assert its negligence claim. It surmises that the only potential duty could be based upon the trespass claim. The Partnership concedes the same in its response, arguing that a trespasser owes a duty of care to the property owner for any damages that occur as a result of the trespass. Having concluded that the Partnership's trespass claim fails as a matter of law, its negligence claim, stemming from the breach of a duty owed by a trespasser, must necessarily fail, too. Accordingly, the Partnership's second assignment of error lacks merit and is overruled.

<u>Assignment of Error Number Three</u>

"THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO GRANT THE PARTNERSHIP'S MOTION TO COMPEL."

{¶15} In its third assignment of error, the Partnership argues that the trial court erred in denying its motion to compel the Practice to provide adequate and complete responses to its interrogatories, requests for admissions, and request for production of documents. We disagree.

{¶16} Initially, we note that "courts have broad discretion over discovery matters." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, at ¶18. This Court reviews a trial court's decision on discovery disputes under an abuse of discretion standard. *Discover Bank v. Cummings*, 9th Dist. No. 08CA009453, 2009-

Ohio-1711, at ¶16. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶17} In August 2008, the Partnership filed a motion to compel, in which it sought to compel Dr. Scroggins and her husband to respond to the Partnership's interrogatories, request for production of documents, and request for admissions. The Practice opposed the motion and the trial court held a hearing on August 18, 2008, on these and other pending discovery motions. At the outset of that hearing, the Partnership and the Practice agreed that the motion to compel responses was moot, as counsel for the Practice had already sent the requested information. Following the hearing, the trial court issued an order stating the same and further ordering that "[t]here shall be no further discovery" in the case until the Court had ruled on the pending summary judgment motions filed by Dr. Wenger and the Practice.

{¶18} On September 19, 2008, the Partnership filed another motion to compel, in which it argued that, after reviewing the Scroggins' discovery responses, it realized that their answers were inadequate and incomplete. The Partnership took issue with the responses on several different bases, including Dr. Scroggins' objections to questions relating to any business relationship she might have with Barberton Citizens Hospital. The Practice again opposed the motion to compel on several grounds.

{¶19} The trial court denied the September 2008 motion to compel without holding a hearing. On appeal, the Partnership argues that the trial court abused its discretion by permitting incomplete or non-responsive answers to its interrogatories and notes that it was not seeking additional discovery, but merely seeking to obtain discovery already requested, but not adequately provided. The Partnership argues that the trial court should have ordered the Practice to comply with the discovery requests because the information sought would have aided the

Partnership in demonstrating that Dr. Scroggins never intended to purchase Dr. Gilcrest's medical practice, but was working to form an arrangement with Barberton Citizens Hospital instead. Consistent with that theory, the Partnership maintains that the information it sought in discovery would have proven that, by remodeling the office without the intent of ever purchasing it, the Practice knowingly caused damage to the premises, sufficient to support its claim for negligence.

{¶20} Our review of the record reveals that, in October 2007, and again in August 2008, the trial court had quashed subpoenas issued by the Partnership to Barberton Citizens Hospital executives in which it sought to obtain documents and depose various employees about the relationship between Dr. Scroggins and the hospital. Thus, it is apparent that early on in this litigation, the trial court had concluded that matters related to the relationship between the Practice and Barberton Citizens Hospital were not the proper subject of discovery in this suit. It is further evident based on a review of the questions to which Dr. Scroggins objected, that the Partnership was attempting to obtain similar information which was previously denied to it about that relationship, but simply seeking to obtain it from a different source.

{¶21} We are also unpersuaded by the Partnership's argument that it was not requesting further discovery, but was only attempting to get adequate answers to its original discovery requests. As stated, the Partnership agreed at the August 2008 hearing that its then-pending motion to compel was moot, as the Practice had responded. Though the Partnership later determined that the answers provided by the Practice were unsatisfactory, it waited nearly a month before filing its subsequent motion to compel. At that point, it had been nearly four months since the initial discovery cut-off date had passed and the first summary judgment motion had been filed and only ten days remained before the trial court's deadline for the

Partnership's responses to both pending summary judgment motions. Additionally, the Partnership's requested interrogatories clearly exceeded the forty-question limit imposed by Civ.R. 33(A), as over half of the twenty-four questions contained at least two subparts, with some questions having six. See Civ.R. 33(A) (providing that "[f]or purposes of this rule, any subpart propounded under an interrogatory shall be considered a separate interrogatory"). Thus, the Practice appropriately objected to several questions on this basis.

{¶22} Under these circumstances, we cannot conclude that the trial court abused its discretion in denying the Partnership's motion to compel. Accordingly, the Partnership's third assignment of error is overruled.

Cross-Appellant's Assignment of Error Number One

"THE TRIAL COURT ERRED IN GRANTING P.N. GILCREST'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS'/CROSS APPELLANTS' ABUSE OF PROCESS CLAIM."

{¶23} In its first assignment of error on cross-appeal, the Practice argues that the trial court erred in granting the Partnership's motion for summary judgment on its abuse of process claim. We disagree.

{¶24} As stated, this Court reviews an award of summary judgment de novo, viewing all evidence in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. See *Grafton*, supra. In order to succeed on an abuse of process claim, a plaintiff must establish that: "(1) [] a legal proceeding has been set in motion in proper form and with probable cause; (2) [] the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) [] direct damage has resulted from the wrongful use of process." *Wochna v. Mancino*, 9th Dist. No. 07CA0059-M, 2008-Ohio-996, at ¶27, quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68

Ohio St.3d 294, 298. "Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse,' of process." (Emphasis omitted.) *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 51. Therefore, malicious motives in filing a suit do not establish abuse of process. Id.

**{¶25}** In its counterclaim for abuse of process, the Practice alleged that the Partnership brought this litigation for the ulterior purpose of circumventing adverse rulings and gaining an advantage in the breach of contract suit the Practice filed in Summit County against Dr. Gilcrest and Gilcrest Inc. ("the Summit County Litigation"). See *Doylestown Family Practice, Inc., et al. v. Philip N. Gilcrest, M.D., Inc., et al.*, Summit County Court of Common Pleas No. 2006-02-1308. The Practice acknowledged in its counterclaim that the Partnership was not a party to the Summit County Litigation, but alleged that the Partnership is the intended beneficiary and/or alter ego of Gilcrest Inc., thereby making them one in the same, despite their separate legal titles. Consequently, the Practice asserted that it has been damaged by expending money on attorney fees required to defend itself in this litigation.

**{¶26}** In its motion for summary judgment, the Partnership argues that the Practice failed to properly plead an abuse of process claim, in that its counterclaim never alleged that the underlying proceeding was brought in the proper form and with probable cause. In light of this assertion, we first consider the pleading set forth by the Practice. In its counterclaim, the Practice alleges, in sum, that:

> "137. *** [V]arious legal issues between [the Practice] and Dr. Gilcrest and/or [Gilcrest Inc.] *** are currently being litigated in Summit County. ***
>
> "138. Judge Mary Spicer made several rulings as to venue, the availability of certain avenues of discovery, and certain theories of liability, which were adverse to Dr. Gilcrest and/or [Gilcrest Inc.]

"139. As alleged herein, [the Partnership] is the principal, intended beneficiary, and/or alter ego of Dr. Gilcrest and/or [Gilcrest Inc.]

"140. Upon information and belief, [the Partnership] has brought this suit for the ulterior purpose of circumventing Judge Spicer's adverse rulings against Dr. Gilcrest and/or [Gilcrest Inc.]

"141. As evidenced by the allegations set forth in the Complaint, discovery requests issued to the parties and subpoenas duces tecum issued to several third parties bearing absolutely no relevance to the Complaint, [the Partnership]'s claims, (regardless of whether they are substantiated in fact or in law), are of secondary importance to [the Partnership].

"142. Upon information and belief, [the Partnership] instead seeks to increase costs to [the Practice] and obtain an advantage in the Summit County [L]itigation.

"143. Such actions constitute an abuse of process for which an award of damages is warranted."

On its face, the Practice's counterclaim fails to assert that the underlying litigation was instituted with probable cause. *Kremer*, 114 Ohio App.3d at 52-53 (concluding that plaintiff's claim "that [the] suit was *not* properly initiated[,] *** [e]ven *** if *** true, *** do[es] not provide a sufficient legal foundation for a claim of abuse of process; rather, [it] would provide support for, if anything, a malicious prosecution claim"). Accord *Vitrano v. CWP Ltd. Partnership* (Dec. 22, 1999), 9th Dist. No. 19516, at *3 (concluding that the complaint "alleg[ed] that the underlying cause of action had not been set forth with probable cause and in proper form"); *Gunaris v. Holiday Lakes Property Owners Association, Inc.* (Feb. 12, 1999), 6th Dist. No. H-98-032, at *4 (affirming the dismissal of an abuse of process claim because "[n]othing in the complaint alleges *** that the acts complained of were instituted *with* probable cause as required to establish a claim for abuse of process"). Despite this omission, the Practice asserts in its response to the Partnership's summary judgment motion that it is the trial court's responsibility to "first determine whether [the Partnership] had probable cause to brings its claims[.]" The Practice goes on to expressly question the Partnership's basis for bringing suit, stating that, "[o]n the

surface, [the Partnership]'s claims appear to have probable cause" but goes on to argue that "[the Partnership]'s main objective in filing this lawsuit was to cause [the Practice] to incur legal fees in defending the litigation, irrelevant discovery requests, motions and subpoenas[.]" It further avers that the Partnership brought the suit only after "[its] efforts had been thwarted in [the Summit County Litigation]" in an attempt to circumvent the rulings in that case and "to cause [the Practice] to incur needless attorneys' fees and expenses[.]" In addition, the Practice argues the suit was brought to divert and divide the efforts of its counsel, who now had to defend against a suit in Wayne County, as opposed to focusing solely on prosecuting the Summit County Litigation. Thus, even in response to summary judgment, the Partnership remains consistent in its belief that the underlying litigation was filed for an improper purpose, without probable cause. See, e.g., *Miller-Wagenknecht v. Munroe Falls* (Dec. 5, 2001), 9th Dist. No. 20342, at *4-5 (concluding that judgment in defendant's favor on plaintiff's abuse of process claim was not against the manifest weight of the evidence where the plaintiff argued through her jury trial that there was no probable cause to support the prior criminal suit against her). In essence, the Practice alleges that filing of this litigation itself was unfounded, a position that we have previously held cannot sustain a cause of action for abuse of process. *Wochna* at ¶27.

{¶27} Because the Practice failed to plead that the Partnership's suit was filed with probable cause, and instead, asserts throughout its motion and brief on appeal that this litigation was merely a manner in which to divert the efforts of its counsel, financially strap it with legal expenses, and obtain information for use in the Summit County Litigation, the trial court did not err in granting summary judgment in favor of the Partnership. Accordingly, the Practice's first assignment of error in its cross-appeal is overruled.

Cross-Appellant's Assignment of Error Number Two

"THE TRIAL COURT ERRED BY DENYING DEFENDANTS/CROSS APPELLANTS' MOTION FOR SANCTIONS AGAINST P.N. GILCREST."

**{¶28}** In its second assignment of error on cross-appeal, the Practice argues that the trial court erred in denying its motion for sanctions against the Partnership. We disagree.

**{¶29}** We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, at ¶18 (reviewing a motion for sanctions under Civ.R. 11); *Ron Scheiderer & Assoc. v. London* (1998), 81 Ohio St.3d 94, 98 (reviewing a motion for sanctions under R.C. 2323.51); *Ponder v. Kamienski*, 9th Dist. No. 23270, 2007-Ohio-5035, at ¶31-38. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶30}** Within days of the trial court's order granting summary judgment in favor of the Partnership on the Practice's abuse of process claim, the Practice filed a motion for sanctions against the Partnership, its attorneys, and Roger Gilcrest, Dr. Gilcrest's son, who is both an attorney and the managing member of the Partnership ("Attorney Gilcrest"). The Practice argued that the foregoing parties engaged in "baseless and frivolous conduct" sufficient to warrant sanctions under Civ.R. 11 and R.C. 2323.51. Much like its abuse of process claim, the Practice argued in its motion for sanctions that the Partnership filed numerous motions, subpoenas, and discovery requests that caused unnecessary delay and a tremendous increase in the cost of the underlying litigation, with the end goal of financially injuring the Practice. It further asserted that the Partnership sought to harass and harm the Practice by attempting to obtain information through discovery in this case, for use in defending the claims against Dr. Gilcrest and Gilcrest Inc. in the Summit County Litigation.

{¶31} Under Civ.R. 11, any attorney who signs a pleading, motion, or other document of a represented party must do so with the "knowledge, information, and belief there is good ground to support it[.]" Civ.R. 11. An attorney who willfully violates Civ.R. 11 can be ordered to pay attorney fees for the opposing party. *Utley v. M.T. Automotive, Inc.*, 9th Dist. Nos. 24482 & 24483, 2009-Ohio-5161, at ¶22. The trial court employs a subjective bad-faith approach in determining whether sanctions are warranted under Civ.R. 11. *Ceol v. Zion Industries, Inc.* (1992), 81 Ohio App.3d 286, 291. The Supreme Court has described the bad faith requirement of Civ.R. 11 as "not simply bad judgment *** [but a] conscious doing of wrong *** 'with actual intent to mislead or deceive another.'" *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, at ¶8, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 151.

{¶32} Pursuant to R.C. 2323.51, an attorney can face sanctions for "[t]he filing of a civil action, *** the filing of a pleading, motion, or other paper in a civil action, *** a motion or paper filed for discovery purposes, or the taking of any other action in connection with" the lawsuit. R.C. 2323.51(A)(1)(a). R.C. 2323.51 also has a broader reach than Civ.R. 11, as it permits a court to impose sanctions "against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4). A trial court can award damages where a party's conduct:

"(i) [O]bviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation[; or]

"(ii) [I]s not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a).

"[A]nalysis of a claim under [R.C. 2323.51(A)(2)] boils down to a determination of (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *Ceol*, 81 Ohio App.3d at 291. Such a determination is factual in nature, so "this Court reviews such a ruling with a substantial deference to the findings of the trial court." *Rogers v. Hood*, 9th Dist. No. 24374, 2009-Ohio-5799, at ¶16.

{¶33} The trial court held a hearing on the Practice's motion, at which Attorney Gilcrest testified as the managing member of the Partnership. He stated that, based on the trespass claim being asserted by the Partnership for damages to its medical office in Wayne County, neither the Partnership, nor its attorneys, believed it could properly bring these claims in the Summit County Litigation, as that involved a contract dispute between Gilcrest Inc. and Dr. Scroggins to which the Partnership was not a party. Moreover, that suit was initiated in Summit County based on a venue term in the contract between Gilcrest Inc., Dr. Gilcrest, and the Practice - a contract that did not include the Partnership. Consequently, the Partnership brought an independent suit for the property damage, which was unrelated to the contract suit and billing problems at issue between Gilcrest Inc., Dr. Gilcrest, and the Practice. Attorney Gilcrest further asserted that the Partnership sought subpoenas for information from Barberton Citizens Hospital because it had a reasonable belief that such documents would lead to admissible evidence of the fact that, while Dr. Scroggins was making representations to Dr. Gilcrest that she wanted to remodel the office in anticipation of later purchasing it, she was also in the midst of negotiations with Barberton Citizens Hospital to aid her in establishing a competing medical office of her own, instead of purchasing Dr. Gilcrest's. The Partnership did not present any witnesses, but argued that, despite Attorney Gilcrest's assertion that the underlying case did not involve a contract dispute, on three

different occasions, the Partnership sought discovery on the existence of any contractual relationship between Dr. Scroggins and Barberton Citizens Hospital.

{¶34} Nothing in the record before this Court demonstrates that the Partnership was engaged in "conscious[ly] doing [] wrong" in this case or that it had any "intent to mislead or deceive" the Practice in bringing the suit. *Bardwell* at ¶8. Though the trial court acknowledged that "[i]n retrospect *** the case could have been managed more efficiently and with less discovery," such inefficiency does not equate to a willful violation of Civ.R. 11. Furthermore, we note that at least a portion of the delay in this case was attributable to the Practice, given that it failed to respond to the Partnership's discovery requests until August 2008, over a year after it was served with the initial requests in July 2007. Moreover, the fact that the trial court denied the Partnership's motions to compel and later granted summary judgment to the Practice on its trespass and negligence claims does not create sufficient grounds, alone, to constitute a frivolous filing under R.C. 2323.51. *Passmore v. Greene Cty. Bd. of Elections* (1991), 74 Ohio App.3d 707, 713 (opining that "the mere fact that a motion is denied [is not] enough to make its filing frivolous" under R.C. 2323.51 and warning that "[t]he legal system *** would grind to a halt if attorneys had to fear the imposition of sanctions for zealously representing their clients"). Accordingly, the trial court did not abuse its discretion in denying the Practice's motion for sanctions against the Partnership and its attorneys.

{¶35} Finally, we note that there was no evidence that Attorney Gilcrest was acting as counsel of record in this matter, signed any documents in that capacity, or was a party to the proceeding. See Civ.R. 11 (permitting sanctions against an attorney who willfully violates the rule); R.C. 2323.51(B)(4) (permitting sanctions against a party and/or the party's counsel or

record). Consequently, the trial court did not abuse its discretion in denying the motion for sanctions against Attorney Gilcrest.

{¶36} For the foregoing reasons, this Practice's second assignment of error in its cross-appeal is overruled.

### III

{¶37} The Partnership's three assignments of error are overruled. The Practice's two assignments of error asserted on cross-appeal are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
<u>CONCUR</u>

<u>APPEARANCES:</u>

DAVID J. WIGHAM, TIMOTHY B. PETTORINI, and LUCAS K. PALMER, Attorneys at Law, for Appellant.

NATHAN D. VAUGHAN, Attorney at Law, for Appellee.

JOSEPH OLDHAM, and CARYN L. PETERSON, Attorneys at Law, for Appellees.

JAY E. KRASOVEC, Attorney at Law, for Appellees.